UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA, )
)
v. ) Cr. No. 02-10286-MLW
)
KEVIN KELLEY, )
    Petitioner-Defendant. )

MEMORANDUM AND ORDER

WOLF, D.J.                                          September 10, 2019

I.    INTRODUCTION

On May 16, 2003, petitioner Kevin M. Kelley pled guilty to being a felon in possession of a firearm. On January 16, 2004, this court sentenced him to 188 months in prison followed by 60 months supervised release. The First Circuit affirmed. See United States v. Kelley, 402 F. 3d 39, 40 (1st Cir. 2005).

On November 8, 2010, Kelley filed a Motion to Vacate his sentence pursuant to 28 U.S.C. §2255 (the "§2255 Motion"). See Docket Nos. 177, 178. The §2255 Motion includes five claims, all related to the fact that the law license of the Assistant United States Attorney ("AUSA"), Donald L. Cabell, who prosecuted him was suspended throughout the prosecution, including at the time of Cabell signed the indictment. See id.

For the reasons explained in this Memorandum and Order, the §2255 Motion is being denied without a hearing.

II. BACKGROUND

On September 17, 2002, Kelley, and his alleged accomplice, Patrick O'Shea, were each charged with being a felon in possession of a firearm, in violation of 18 U.S.C. §922(g)(1). On March 26, 2003, a grand jury returned a superseding indictment against Kelley, again alleging that he was a felon in possession of a firearm. Both the original and superseding indictment were signed by AUSA Cabell alone. See Docket Nos. 8, 67.

On May 16, 2003, the court accepted Kelley's guilty plea pursuant to a conditional plea agreement. See Docket No. 126. As indicated earlier, Kelley was sentenced to 188 months in custody, 60 months of supervised release, and a $100 special assessment. The First Circuit affirmed the conviction on March 22, 2005.

On December 5, 2008, the United States Attorney for the District of Massachusetts sent a letter to Miriam Conrad, the Federal Public Defender for the District of Massachusetts, informing her that AUSA Cabell had been suspended by the Board of Bar Overseers for failure to pay dues during the prosecution of several of the Public Defender's clients, including Kelley. See Gov't Mot. to Dismiss §2255 Pet. Add. (Docket No. 186-1) at 19. The letter stated that the suspension had been lifted. The United States Attorney also stated that she did not believe

2

that the suspension "undermines the validity of the cases [Mr. Cabell] prosecuted. There simply is no constitutional right to be prosecuted by a lawyer who does not have a defect in his license." Id. (footnote omitted). The letter further indicated that "[n]o case prosecuted by the United States Attorney for the District of Massachusetts is prosecuted by a single assistant. Rather, the decision to prosecute is considered and made by a number of people and AUSAs at all times act under the direction of a supervisory AUSA." Id. at 21. On December 22, 2008, the United States Attorney sent a similar letter to counsel for Kelley's co-defendant, O'Shea. See §2255 Mot. App'x (Docket No. 177-2) at 2.

On November 8, 2010, Kelley filed the instant §2255 Motion. The Motion raises five grounds for relief, all of which involve the AUSA's suspension during Kelley's prosecution. On February 12, 2015, the court issued a Memorandum and Order discussing the legal issues raised in the §2255 Motion. See Docket No. 192.[1] As the court wrote: "Kelley argues that his right to due process was violated by the suspended AUSA's signing of the indictment, the litigation of the case by the suspended AUSA, and the government's

---

[1] Further relevant background is also contained in the February 12, 2015 Order. See Docket No. 192 at 2-6.

3

failure to disclose the 'exculpatory evidence' regarding the AUSA's suspension to Kelley. Kelley also argues that the AUSA committed fraud upon the court, and that his counsel was unconstitutionally ineffective for failing to alert Kelley to the relevant information in a timely manner." See id. at 4-5; see also §2255 Motion (Docket No. 178) at 4-7. Noting that the §2255 Motion raised complex factual and legal questions, the court ordered supplemental briefing and appointed counsel for the defendant. Id.

The defendant and the government filed supplemental memoranda which focused on the timeliness of the §2255 Motion, whether the requirement that an attorney for the government sign the indictment is jurisdictional in nature, and whether any error was harmless. See Docket Nos. 201, 204, 209.[2] The government also filed an affidavit addressing: (1) the steps it took to inform the defendant of the AUSA's suspension at the time the defendant was being prosecuted; and (2) the participation of other government attorneys in the indictment and prosecution of Kelley. See Docket No. 197.

On December 8, 2015, the court allowed the petitioner to amend the §2255 Motion to add a claim based on United States v. Johnson,

---

[2] The government's supplemental memorandum (Docket No. 204) also references arguments contained in an earlier filing, Docket No. 186.

4

35 S. Ct. 2551 (2015). See Docket No. 22. The proceedings were stayed pending a First Circuit decision, following which the parties made multiple submissions concerning the merits of the Johnson §2255 claim. See Docket Nos. 220-21, 225, 228, 261-62. Ultimately, based on the Johnson issue, the government and counsel for the defendant agreed on a reduction of the defendant's sentence to 120 months incarceration and 36 months of supervised release. See Docket Nos. 270, 272, 280.

On May 8, 2019, the defendant filed a Renewed Motion for Ruling on Johnson and Granting of a Hearing on Cabell Issue and to Set Hearing. See Docket No. 297. The defendant requested a reduction in the sentence pursuant to the parties' agreement, a further reduction in the period of supervised release to time served, and a ruling concerning the AUSA Cabell disqualification issue. See id.

On May 14, 2019, based on the Johnson claim, the court issued an Amended Judgment, resentencing the defendant to 10 years incarceration, deemed served, and a period of supervised release of time served. See Docket Nos. 298, 299. Accordingly, the remaining portion of the §2255 Motion consists of the claims regarding the suspension of AUSA Cabell.

III. DISCUSSION

The court is denying petitioner's claims based on the fact that the law license of the AUSA who prosecuted him was suspended

5

throughout the prosecution. The court finds that the requirement that an indictment contain a signature of a government attorney is not jurisdictional.[3] In addition, the defendant has not demonstrated that but for the purported error, there is a reasonable probability he would not have pled guilty.

    A. <u>The Effect of Attorney Cabell's Suspension on the Validity of the Indictment and Prosecution</u>

Federal Rule of Criminal Procedure 7(c)(1) states that a criminal indictment "must be signed by an attorney for the government." Fed. R. Crim. P. 7(c)(1). As discussed below, the decisions of multiple courts confronted with facts similar to those of the instant case indicate that a criminal indictment is not rendered invalid, and the court is not divested of jurisdiction, due to a defect associated with attorney's signature on the indictment when other evidence demonstrates that the government has approved and endorsed the prosecution.

"The primary purpose served by affixing the U.S. Attorney's signature to an indictment is to indicate that he joins with the Grand Jury in instituting a criminal proceeding. Without his agreement no criminal proceeding could be brought on the

---

[3] In its supplemental memorandum, the government states that it is not maintaining the issue of whether Kelley's §2255 Motion was timely filed. <u>See</u> Docket No. 204 at 3. The court is, therefore, not addressing it.

6

indictment." United States v. Wright, 365 F.2d 135, 137 (7th Cir. 1966); see also Little v. United States, 524 F.2d 335, 336 (8th Cir. 1975) ("The signing of an indictment is one step in the conduct of a criminal proceeding. Its function is to show that the attorney for the United States joins with the grand jury in instituting the proceeding.").

If it is proven that the grand jury and the U.S. Attorney agreed that the indictment should issue, the fact that the indictment was not signed by an attorney for the government does not render it invalid or deprive the court of jurisdiction. As the Seventh Circuit explained:

> The Federal Rules of Criminal Procedure state that indictments are to be signed by both the foreperson of the grand jury and by an attorney for the government. See Fed. R. Crim. P. 6(c) ("The foreperson . . . shall sign all indictments."); Fed. R. Crim. P. 7(c)(1) ("[The indictment] shall be signed by the attorney for the government."). However, precedent of the Supreme Court and of this Court indicate that both of these signatures are technical deficiencies that are not necessarily fatal to the indictment. See United States v. Wright, 365 F.2d 135, 137 (7th Cir. 1966) ("[T]he signature of the prosecuting attorney is not an essential part of the information; nor is improper signing of the instrument a defect such as to invalidate it."); Hobby v. United States, 468 U.S. 339, 345 (1984) ("Even the foreman's duty to sign the indictment is a formality, for the absence of the foreman's signature is a mere technical irregularity that is not necessarily fatal to the indictment.") (citing Frisbie v. United States, 157 U.S. 160, 163-165 (1895)). Because

7

> the alleged failure of the grand jury foreperson and the attorney for the government to sign the indictment would be mere technical deficiencies, and because the defendant does not allege that the indictment did not adequately inform him of the charges against him or otherwise prejudice his defense, the defendant's challenge to the sufficiency of the indictment is without merit.

See United States v. Irorere, 228 F.3d 816, 830-31 (7th Cir. 2000); see also United States v. Easton, 937 F.2d 160, 162 (5th Cir. 1991) ("[T]he Rule 7(c)(1) requirement of an indictment signature by 'the attorney for the government' is nonjurisdictional.").

Indeed, long ago, the Supreme Court determined that a deficiency associated with the attorney's signature did not affect jurisdiction if other procedures confirmed the legitimacy of the prosecution. In re Lane, 135 U.S. 443, 449 (1890). The Supreme Court stated:

> An objection is made to the indictment that it was not signed by the district attorney of the United States; but, as the indictment was found by the grand jury, and indorsed as a true bill by the foreman, and filed in open court according to law, we do not see that there is any error on that subject; certainly none which goes to the jurisdiction of the court.

Id.; see also Easton, 937 F.2d at 162 (quoting In re Lane, 135 U.S. at 449).

Applying this principle to cases comparable to the instant case, multiple courts have held that an indictment is not invalid if the prosecutor was not licensed to practice if other evidence

8

indicates that the government endorsed the prosecution. See United States v. Bennett, 464 Fed. App'x 183, 185 (4th Cir. 2012) (An indictment signed by an AUSA who had his bar license administratively suspended did not deprive the court of jurisdiction because "the United States Attorney, an authorized representative of the Government, also signed the indictment."); Woods v. United States, 2010 WL 4746138, *2 (M.D.N.C. Nov. 16, 2010) (rejecting claim that the plea hearing and indictment were "tainted" because the prosecutor was not licensed as other AUSAs were involved in key parts of the proceedings); Parker v. United States, 2006 WL 2597770, at *15 (E.D. Ark. Sept. 8, 2006) (rejecting §2255 claim claiming the indictment and prosecution of the defendant were nullities due to invalid law license of the prosecuting AUSA, because the AUSA "was acting on behalf of the U.S. Attorney who was licensed to practice and authorized the indictment to be presented to the grand jury"); see also United States v. Durham, 941 F.2d 886, 891-92 (9th Cir. 1991) (finding that the presence of an unauthorized special AUSA before a grand jury implicates the court's jurisdiction only if the special AUSA was not under the supervision of the United States Attorney's Office).

As the court wrote earlier in this case:

> 28 U.S.C. §530B(a) states that an "attorney for the government shall be subject to State laws and rules, and local Federal court rules,

9

> governing attorneys in each State where the attorney engages in that attorney's duties, to the same extent and in the same manner as other attorneys in that State." The Local Rules of the United States District Court for the District of Massachusetts ("Local Rules") do not require that an AUSA be a member of the bar of the Commonwealth of Massachusetts. See Local R. 83.5.3(a). They do, however, require that any attorney seeking to represent the United States be "[a]n attorney in good standing as a member of the bar in every jurisdiction where he or she has been admitted to practice . . . ." See id.
>
> AUSA Cabell was admitted to practice as a member of the Massachusetts bar. The Massachusetts Supreme Judicial Court ("SJC") Rules, which govern Massachusetts bar membership, provide that an attorney who is suspended for failure to pay bar dues is prohibited from practicing law until he is reinstated. See Supreme Judicial Court R. 4.03(2), 4.01 §17(7).
>
> At the time that he signed the indictment, AUSA Cabell was not authorized to practice law by the SJC. Therefore, pursuant to the Local Rules and federal statute, he may have lacked the authority to sign the indictment as an "attorney for the government."

See February 12, 2015 Memorandum and Order (Docket No. 192) at 10-11.

Although the evidence now demonstrates that AUSA Cabell did not have the authority to act for the government in signing the indictment, it also demonstrates that the United States Attorney, acting through qualified representatives, agreed with the grand jury that the indictment should issue. Therefore, the indictment was valid and the court had jurisdiction concerning it.

More specifically, as the government has attested in a declaration filed pursuant to the court's order, the superseding indictment charging Kelley and the accompanying prosecution memorandum were approved by James F. Lang, Chief of the Major Crimes Unit, and James B. Farmer, the Chief of the Criminal Division, in the United States Attorney's Office ("USAO"), as required by USAO policy. See Young Decl. (Docket No. 197-1) ¶¶5, 6, 7. In addition, the signature line of the plea agreement included the names of three government representatives in addition to AUSA Cabell: the United States Attorney, Michael J. Sullivan, Stephen P. Heymann, Deputy Chief of the Criminal Division, and Farmer. See Young Decl. ¶7. The agreement was signed by Farmer. See id. Therefore, although the AUSA who signed the indictment was not authorized to practice, the prosecution of Kelley was evaluated and authorized by the prosecutors who were. Accordingly, the purpose of Rule 7(c)(1) was fulfilled, and Kelley's indictment not invalid. Therefore, the court was not deprived of jurisdiction, and Kelley has not established that AUSA Cabell committed a fraud upon the court.

This case is distinguishable from United States v. Cox, 342 F.2d 167 (5th Cir. 1965), which the court discussed in the February 12, 2015 Memorandum and Order. See Docket No. 192 at 12-13. In Cox, the government appealed from an order holding in contempt a United States Attorney for refusing to obey a court order that he

draft and sign certain indictments requested by a grand jury. The Fifth Circuit vacated the order, noting that under Federal Rule of Civil Procedure 7, "[w]ithout the signature there can be no criminal proceeding brought upon an indictment" and "[t]here seems to be no authority for the statement that the absence of a signature is not fatal." Id. at 172. However, in Cox, the Acting Attorney General had instructed the United States Attorney not to draft or sign any of the indictments. Id. at 169.

The instant case is also materially different than United States v. Providence Journal, 485 U.S. 693, 699, 707-08 (1988), on which petitioner relies. There, a special prosecutor filed a petition for certiorari without the statutorily required consent of the Solicitor General. The Supreme Court found it lacked jurisdiction to consider the petition due to that defect. However, in contrast to Providence Journal, the prosecution of Kelley was approved by multiple government representatives authorized to do so.

In view of the foregoing, the court finds that the fact that AUSA Cabell's license to practice had been suspended caused a violation of Rule 7(c), but the court was not deprived of jurisdiction.

B. <u>The Voluntariness of Kelley's Plea</u>

Kelley argues that his plea was not knowing and voluntary because if he had known that Cabell was unlicensed and that the court, therefore, did not have jurisdiction, he would not have pled guilty. <u>See</u> Docket No. 201 at 11. This contention is not meritorious.

Kelley's guilty plea waived any claim based on AUSA Cabell's suspension other than the jurisdictional claim. <u>See</u> <u>United States v. Cordero</u>, 42 F.3d 697, 698-99 (1st Cir. 1994); <u>United States v. Broce</u>, 488 U.S. 563, 569 (1989). Nevertheless, "a prisoner can collaterally attack his sentence on the ground that his guilty plea was not knowing or voluntary if his claim is based on evidence not available to him at the time of the plea." <u>Wilkins v. United States</u>, 754 F.3d 24, 28 (1st Cir. 2014).

To challenge a guilty plea in a §2255 proceeding, the petitioner must establish that: (1) "some egregiously impermissible conduct (say, threats, blatant misrepresentations, or untoward blandishments by government agents) antedated the entry of his plea," and (2) he must show that "the misconduct influenced his decision to plead guilty or, put another way, that it was material to that choice." <u>Ferrara v. United States</u>, 456 F.3d 278, 290 (1st Cir. 2006). To establish the second element, the petitioner must show "a reasonable probability that, but for

13

[the misconduct], he would not have pleaded guilty and would have insisted on going to trial." Id. at 294.

In the instant case, AUSA Cabell's role in signing the indictment was not "egregiously impermissible conduct." Ferrara, 456 F.3d at 290. Nor is there a reasonable probability that Kelly would have gone to trial if he had known that Cabell was not licensed and, therefore, not authorized to sign the indictment.

"The test of whether there is a reasonable probability that the defendant would have gone to trial . . . 'is an objective one . . . . It does not involve an 'individualized inquiry' regarding the impact on a particular attorney or defendant." Ferrara v. United States, 384 F. Supp. 2d 384, 422 (D. Mass. 2005) (quoting Miller v. Angliker, 848 F.2d 1312, 1322-23 (2d Cir. 1988)).

In this case, if the fact that Cabell was not licensed had been known before the plea, a reasonable person would have also known that the defect in the indictment could have been remedied by having the United States Attorney or a licensed AUSA sign it too. In addition, even without the added signature, if the defendant had moved to dismiss the indictment for lack of jurisdiction, this court would have denied the motion, and there is no reasonable probability that Kelley would not have pled guilty.

Kelley also asserts in a footnote that the fact that AUSA Cabell was the only government attorney present at the grand jury

proceeding violated Federal Rule of Criminal Procedure 6(d). See Docket No. 201 at 9, n.2. Rule 6(d)(1) states that "[t]he following persons may be present while the grand jury is in session: attorneys for the government, the witness being questioned, interpreters when needed, and a court reporter or an operator of a recording device."

This claim is asserted in a perfunctory manner without sufficient explanation. It is therefore waived. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990). In any event, a violation of Rule 6(d) only requires reversal if there has been prejudice. See United States v. Mechanik, 475 U.S. 66, 71-72 (1986). Here, any alleged violation of Rule 6(d) was not prejudicial because Kelley has not demonstrated that Cabell's administrative suspension influenced the grand jury's decision to indict him. See Franklin v. United States, 2011 WL 1675035 at *6 (M.D.N.C. May 3, 2011) ("Petitioner has not shown that [the AUSA's] lack of a valid license actually affected the decision to indict or the presentation to the grand jury at all."); Thomas v. United States, 2014 WL 1230217, at *4 (M.D.N.C. Mar. 25, 2014) (similar); see also United States v. Hefner, 842 F.2d 731, 733 (4th Cir. 1988) (applying Mechanik in the guilty plea context); Alston v. Ricks, No. 01 Civ. 9862, 2003 WL 42144, at *7 (S.D.N.Y. Jan 7, 2003) (same).

IV. CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11(a) of the Rules Governing Section 2255 Proceedings, the court must "issue or deny a certificate of appealability ("COA") when it enters a final order adverse to the applicant." To receive a COA, a petition must make a "substantial showing of a denial of a constitutional right." See 28 U.S.C. §2253(c)(2). In other words, a COA is warranted if "'reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)). A claim can be debatable "even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail." Id. The threshold for obtaining a COA has been described as a "low standard." Beardslee v. Brown, 393 F.3d 899, 902 (9th Cir. 2004). The COA "shall indicate which specific issue or issues satisfy the showing required by [§ 2253(c)(2)]." 28 U.S.C. § 2253(c)(3).

The question of whether the indictment was invalid, and that this court therefore lacked jurisdiction, because the prosecutor who signed the indictment was not a licensed member of the bar is unusual. While the court believes that its reasoning regarding this issue is correct, it may be characterized as "debatable."

16

Miller-El, 537 U.S. at 338. Therefore, a COA is being issued on these questions.

The court does not find debatable its conclusion that Kelley would have pled guilty if informed that the AUSA who signed the indictment was not then duly licensed. As explained earlier, if necessary, this defect could have been easily remedied by the government, and Kelley would have known this and pled guilty to the indictment or to a possible superseding indictment signed by a prosecutor eligible to do so. Therefore, a COA is not being issued concerning Kelley's claim that his plea was not knowing and voluntary.

The court also finds that no reasonable jurist would conclude that Kelley was prejudiced by AUSA Cabell's participation in the grand jury proceeding. A COA is, therefore, not being issued on this claim. However, Kelley may seek authorization from the Court of Appeals for the First Circuit to pursue an appeal of the claims for which this court is not issuing a COA. See §2255 Rule 11(a).

V.   ORDER

In view of the foregoing, it is hereby ORDERED that:

1.   Defendant's Motion to Vacate Pursuant to 28 U.S.C. §2255 (Docket Nos. 177, 178) as it relates to the suspension of AUSA Cabell is DENIED.

2.   A COA is ISSUED as to the claim that Kelley's indictment

was invalid, and that this court therefore lacked jurisdiction, because the prosecutor who signed the indictment was not a licensed member of the bar.

3. A COA is DENIED as to all other claims.

                                                     _____
                                                     UNITED STATES DISTRICT JUDGE